Good morning, Your Honours. May it please the Court. My name is Gerry Hamilton and I'm here on behalf of Dongwon Industries. And I notice that you're also from quite a distance. Miami. My office is about two blocks away from Mr. Wagner. We didn't travel on the same flight and I'm equally honoured to be here before the Court. As you know, the issue before the Court is an issue on arbitration. And as we know, because the Ninth Circuit has addressed the issues on arbitration before, that we stand on a very strong foundation of a policy that favours arbitration. That any doubts that really concern the scope of an arbitrable issue should be resolved in favour of arbitration. Well, then that leads me very naturally to the order that the Court had issued in this case, asking Council to be prepared to discuss, because it wasn't really discussed in the briefs, the differences between the FAA and the Convention. And the fact that unlike the FAA, the Convention does have specific language requiring the parties to be signatories.  Absolutely, Your Honour. And an appreciated question from the Court. It was a very good question. So if the Court looks to Article 2 of the Convention, which is different than the FAA. The Convention was a treaty that was passed and adopted by the Congress in 9 U.S.C. Section 2. If you look at Article 2, Article 2 says that each contracting state shall recognise an agreement in writing. And that's Article 2, Section 1. And then Article 2, Subsection 2 says, and this is very important, that the term agreement in writing shall include an arbitrable clause in a contract or an arbitration agreement signed by the parties. Now, since that Convention was passed back in 1958, I believe, there was further recommendations made by the United Nations regarding how the Courts should interpret Article 2, Section 2. And what the United Nations said there specifically, and it's attached to the Convention itself, was it made a recommendation regarding the interpretation of Article 2, Section 2, regarding an agreement in writing. And it said, because we want to promote arbitration, because we recognise that arbitration is such that it helps resolve disputes quickly without a lot of judicial labour, it recommended that, and I'll read it verbatim, it says, it recommends that Article 2, Paragraph 2 of the Convention on Recognition and Enforcement of Foreign Arbitral Awards, done in New York, 10th June 1958, be applied recognising that the circumstances described therein are not exhaustive. So what the UN and the Treaty said in interpretation was that do not just rely upon the agreement in writing signed by the parties, because we said specifically in Article 2 that that was one of the options, it should include as one of the options, but it was not an exhaustive list of how it is that an arbitration should come before this particular Court. Now, this Court in the Ninth Circuit has addressed a similar issue in a case called Balin v. Holland America. It was a case that you actually cited in the question that you put forth to the parties. And one of the issues in Balin was this. It was an admiralty case involving a seaman. The seaman argued that the cruise line, in this case Holland America, did not actually sign the contract, which included the arbitration agreement. And in fact, what they argued, the plaintiff argued, was because the shipowner didn't sign the contract, then it wasn't signed by the parties. In that particular case, the argument was made that because this was a contract, an arbitration contract in the Philippines, the Philippines required an agent to sign on behalf of the cruise line, an agent to sign on behalf of the principal. And what this Court held is because ordinary contract and agency principles apply to arbitration agreements, we will look to those ordinary contract and agency principles, which include agency, which include piercing the corporate veil, which include equitable estoppel, and we will apply those ordinary principles of contract and find that Holland America did in fact sign the arbitration agreement and that arbitration was in fact enforceable. So if you look, this Court has already taken ordinary contract principles in a convention case and has applied those principles. And this Court has also taken and defined what these ordinary contract principles are. And what the Court said in multiple cases, and starting with a case called Comer v. Madcor, which is at 436 F. 3rd 1098, is that when we're looking at the ordinary contract and agency principles, we're looking at five things. We're looking at incorporation by reference, assumption, agency, veil, piercing, and alter ego, and equitable estoppel. So apply those agency principles in this case. What are you relying on? All right, so a few things in this particular case. So as the Court knows, there was a contract of arbitration that was actually entered into between Yang and Majestic Blue and Dong Wang signed as agent for Majestic Blue. In that particular agreement, it said that any claim or any dispute arising out of the employment or the service on the vessel is subject to arbitration. And in fact, Yang was compelled to arbitrate his case and is attempting to arbitrate his case in Korea as we speak. Dong Wang, the district court held, simply didn't sign the agreement and so therefore wasn't bound by the arbitration clause. The problem with that particular argument is this. If you look to what the complaint in this case says, what the plaintiff has alleged in this case, the plaintiff has alleged that not only that Dong Wang signed a contract of employment which allowed Mr. Yang to go on board the vessel, but it alleges that Dong Wang was the employer of Mr. Yang, alleges that Dong Wang and Majestic Blue are alter egos, alleges that Dong Wang was the owner and operator of the vessel, not just the agent, alleges that Dong Wang was the principal in this case and not just the agent. And so therefore, looking at all those allegations, there are multiple cases in the Ninth Circuit, starting off with cases such as a case known as Letzi, which is found at 802 Federal 2nd 1185. When was the agency in alter ego arguments raised for the first time below? They were addressed in the report and recommendations by the magistrate. In fact, the magistrate had a section in his order. When did you raise the agency in alter ego theories below? Was it in connection with the motion for reconsideration? Very clearly there. However, it was also addressed tangentially, not clearly, in our first motion to the magistrate on a report and recommendations, and then we addressed it very clearly on reconsideration. And the district court on reconsideration actually addressed the merits of both the alter ego theory and the agency theory. So it is very, it's a strained argument to then say that those issues were waived because they were dealt with on reconsideration. And the case of Wicketer v. Executor 953 Federal 2nd 510 from the Ninth Circuit states that if you address those issues adequately in reconsideration, this court can rule upon those particular issues. And, in fact, they were not only addressed in the appellant's brief to this court, but the appellee has now fully addressed those particular arguments and it's properly before this particular court. And so, again, one can't look at the, there are three ways to arbitration, the three paths to arbitration for Dong Wong. And the path number one is under equitable estoppel where Dong Wong, in this case, is being held to be the principal in this case. It's being asserted that but for Dong Wong's actions and but for the fact that Yang signed this core agreement, that Dong Wong simply would not be sued at all. Meaning, if you look at a district court argument and the arguments that it made, it looked at the issues too narrowly. It didn't look at the complaint appropriately. But for an employment contract, Mr. Yang would never be on the vessel. But for Mr. Yang being on a vessel, Dong Wong would never be in the lawsuit. So Mr. Yang is taking a vested interest in the employment contract and is using it as a basis to bring a claim against Dong Wong, but yet still is trying to avoid the arbitration clause that is included in the contract. So you can't have it both ways. Do DOSHA and general maritime law require an employment contract to state a claim? So the answer is there has to be an employment agreement because under the Jones Act, there must be an employment relationship. Now, whether or not you need to have an employment agreement is an issue as to whether or not the court's going to fashion what that agreement might be, an oral agreement. However, let me just address that particular issue. In the complaint, what the plaintiffs have said in the DOSHA claim, in the Jones Act claim, because they have allegations 1 through 42, right? And in 1 through 42, they've incorporated those allegations in the Jones Act claim, in the DOSHA claim. And in those allegations, they have alleged an employment contract. They have alleged that Dong Wong is the employer, and the employment contract is dated March 10th. My question, counsel, is in order for them to prevail, does he have to prove an employment agreement under DOSHA and general maritime law? Absolutely. Absolutely. He does. Okay. And under the Jones Act, it has to be, does he have to prove an employment agreement? Absolutely. Okay. And it has to be a contract, a written contract. Well, that's where I think we differ. It doesn't necessarily have to be a written contract. Okay. It has to be a contract. It has to be an agreement. But the only thing pled in this case is a written contract, meaning that the plaintiffs have pled not an oral contract. They have pled a specific written contract with a date. I understand what they pled, counsel. I want to know if you, if they hadn't, whether you would move to dismiss the claim because they failed to allege a necessary element of the claim. If they had alleged just an agreement and not said it was oral or written, I don't think we could dismiss on that particularly. Okay. So then my question, going back to DOSHA and maritime law, is you say they must have an employment agreement. Sorry? So if they don't have an employment agreement, there's no claim. If they cannot establish an employment agreement, an employer-employee relationship, there is no claim. Again, the question is oral or written. But in this particular question, in this particular case, it is in fact written. Well, I know it is in this case, but the question is under California law, it depends on what elements of the claim are, and the claim is misconduct by your client. Right. So under California law, and I'd direct the Court's attention to two very instructive cases, which would be the case that is cited, Boucher v. Alliance, title 127, Cal App 4262, and Roe v. Exline, which is 153, Cal App 1276, that the analysis to be done is to look at what the allegations are to see whether or not those allegations truly implicate the contract in question. Are they truly inextricable? Are they truly intertwined? And then are the allegations also interdependent and assert the concerted misconduct? That's California law, and that's exactly what has happened in this particular case. There's no separation between Dong Wang and Majestic Blue, and there's never been a separation that a plaintiff has made between Dong Wang and Majestic Blue with respect to its actions, with respect to the contract, with respect to the allegations of Alta Eagle in this particular case. Okay. Thank you. Thank you. May it please the Court. I'm Scott Wagner, representing Ms. Yang in this matter. I hope to discuss this morning, first, why the Convention Act, Section 9, Chapter 2, Sections 201 or Title 9, Chapter 2, Sections 201 to 208, does not afford Dong Wang the ability to climb over the subject matter jurisdictional hurdle because there is no signed writing between the parties. Two, why the district court was correct to bar the agency in Alta Eagle for waiver and why they shouldn't apply anyway. And three, why even if they were over the jurisdictional bar and into the substantive analysis, why there is no equitable estoppel which should apply under either the law as applicable in California and because there are actually no equities in this case to require it. Now, we think all those points merit your attention. I'd like to start with the jurisdictional issue that the court had raised in its docket text order. Dong Wang has conceded that it is a non-signatory to the contract. Furthermore, they have conceded that they are an agent for disclosed principle, majestic blue fisheries being the principle, and so under the agency law that they so desperately cling to, the ordinary contract principles and agency law, an agent for disclosed principle is actually not party to the agreement as a matter of law. And so not only are they by their own concession a non-signatory, they're also, as a matter of agency law, not a party. And because the Convention Act, different from the FAA, requires as a jurisdictional matter, a form requirement before we get to the substantive analysis, as a jurisdictional matter requires an agreement in writing, which is specifically defined as an agreement in writing signed by the parties, Dong Wang cannot get over that jurisdictional threshold to even get into the equitable estoppel substantive analysis down the road. They are by concession a non-signatory. They are by concession an agent for disclosed principle and therefore not a party. So there can be no agreement in writing signed by the parties because they're non-signatories and they're not a party. And so I think this case is markedly different from the Balin case and also from the Agar.io case that has been cited in the briefs out in the Fourth Circuit because in those cases, the party that's seeking enforcement is the principal, who is not in the room, who was forced under this Filipino labor situation that's going on over there with collective bargaining agreements, is forced to employ an agent to do the work on its behalf. And so that's actually not what's happening here. In all those other cases, it's principals who are outside the room coming in to assert the right under the contract because their agent signed it. In this case, Dong Wang's in the room. They're not outside. They're not a principal outside. They're in the room as an agent for a disclosed principle. And so when the contract is signed, they say, for Majestic Blue only, not us. And now they come back in and say, wait a second, it's for me. We're a party to this agreement too. They had the best opportunity. I think often courts ask, who had the best opportunity to avoid this mess? Dong Wang is in the room at the time the contract is signed, and they stand up and say, I'm an agent for a disclosed principle, and so we are not party to this agreement. I think as a jurisdictional issue that the court has raised, and I think this subject matter jurisdiction, as the court knows, under Henderson v. Shinseki, 562 U.S. 428, 2011, can be raised at any time. This is a form requirement under the Convention Act. It's a form requirement that's jurisdictional. That jurisdictional bar cannot be met by Dong Wang, who has conceded they did not sign it, and by agency principles are not a party, and so therefore you cannot have an agreement signed by the parties  He relied on the fact that the Article 2 U.N. commentary or whatever, modification, clarification, said that's not exhaustive, so what's your response to that? My understanding, Your Honor, is that these recommendations are recommendations that are currently under discussion but are not part of the Act. This Act, which has been codified at law, specifically includes the Convention Treaty, which talks about it shall be an agreement in writing signed by the parties. That's how it's defined, and my understanding is not only is that defined this way here, but that countries and nations across the world are enforcing it in the exact same manner, and the only confusion, as far as we can tell, certain law review articles, is coming from U.S. courts who are not strictly enforcing that jurisdictional bar, and part of the reason is I think many of the courts in many of the cases that we have read at best gloss over the agreement in writing jurisdictional requirement by not taking a look behind the curtains and figuring out how that's defined in the treaty as a writing signed by the parties. Well, you know, in the appellate, at the circuit level, there's only, maybe there are others, but the ones that come to mind are the Khan-Lucas case out of the Second Circuit? We think the Khan-Lucas case applies squarely. That case is a case that did, in fact, consider it. It's one of the only cases that specifically considered it and found that jurisdictional requirement to be a strict one, to be exactly what the plain language of the statute says it is, which is a specific definition of an agreement in writing signed by the parties. We do think Khan-Lucas applies. I think that it's a case that addresses this squarely, and it's distinguished. So there's a Fifth Circuit decision called Sphere Drake, which kind of split, parsed the language a little bit. Yeah, Sphere Drake's a little bit different, and I think one of the things that's a distinguishing factor about the differentiations between the case that is before the Court here and many of the other cases that are out there is that in the other cases that we've read that are out there, it's always the principal who's not in the room who's raising his hand saying, wait a second, that's an agreement signed by us because that was our agent. But in this case, Dong Wan is not the principal outside the room. They are the entity inside the room who is raising their hand to the person signing it, Mr. Yang, and saying we're just an agent for a disclosed principal, and so we're not part of this contract. And I think that's a huge— But we may not have to get into the application of agency and alter ego if it's waived on this record, right? That is true, Your Honor, and I think that— but I do think that at the outset when the Court is considering the jurisdictional issue of whether you have an agreement signed in writing by the parties, and the Court looks at the agency principal, if it does, to say they're actually an agent for a disclosed principal, not the other way around, and so they're not even party. Forget about the fact that they're conceding, and I think the Court has noted they've conceded as a non-signatory. So you can't get to the signed part, but as an agent for a disclosed principal and not even a party. And so they've got to find a way to get to be a signed—an agreement signed by the parties, and they're missing both of those. Is your argument that we have to decide this question if it's jurisdictional? Yes, I think the Court does need to reach a jurisdictional— subject matter jurisdiction in this case. And only then can you get over the hurdle into whether we consider the alter ego or the agency or the substantive equitable estoppel. There has been representations to this Court today that this issue was, quote-unquote, addressed tangentially. I think if the Court looks at what that means as to how it was addressed tangentially with respect to waiver, what happened is that Don Juan said there are five avenues to get there—alter ego, equitable estoppel, agency, etc., etc. And then they say, but only one applies—equitable estoppel. That's not addressing the issue tangentially. That's saying the other ones don't apply. That's the basis for the waiver here, Your Honors. They do set out the five, which acknowledges that they knew about them. And then they said, but only one applies, and that's the equitable estoppel. There is nothing equitable about having the party in the room who's in the best position to enforce its situation under the contract come in later and say, wait a second, we deserve the equities of the Court. It's understandable when a principal appoints an agent, but it's not understandable when the agent, Don Juan, is in the room at the time and is in the best position to create clarity. This mess has occurred because Don Juan didn't do, and now would like to come back in and enforce the equities of the scenario. There has also been, I believe Judge Fischer asked the question, regarding whether you need a contract, written or otherwise, under two causes of action. I think it was discussed under Jones Act, but as far as I recall the question, it was— DOSA and General Maritime. You don't. Under DOSA, there is no employer-employee requirement. The statute's clear. If you're a party that has contributed to the death of somebody on the high seas, you don't have to show that you're an employer or an employee. You don't have to show that you're a passenger on somebody's boat. You could be on your own little boat and somebody else causes you injury, and you have a claim under DOSA. And so DOSA is not exclusive in any way, shape, or form to an employer-employee relationship, let alone a contract. Under General Maritime law, which is where a lot of the, for instance, unseaworthiness is often asserted, that also doesn't have an employer requirement. It has an owner requirement, which is different. An owner is required to provide a seaworthy vessel, but not just to its employees, to anybody who may be on board, a paying passenger, a guest, whoever, a family member. So those principles of both DOSA and unseaworthiness not only don't require an employment contract or an agreement, they don't even require an employment relationship. As you go into Jones Act, now you have to prove that you have what the law calls an employer-employee relationship. You don't have to prove that there's a contract. You don't even have to prove that there's an agreement. In fact, the law presumes several times the borrow-servant doctrine to allow a claimant to sue a party who is deemed to be the employer. And so I just want to correct the record because it is ultimately clear you do not need a contract. Otherwise, what you would have happen in every Jones Act case, Your Honors, is that you would have some owning entity creating up some shell corporation to sign all the employment contracts with no assets, and you would leave Seaman without any cause of action under the Jones Act. That's not what the law instructs, and it's not what the law requires. Under Jones Act, you simply need to prove that there's a relationship, and you can prove it through an employment contract or otherwise. In this case, this is a much different case, Your Honors, than a situation where somebody is enforcing the terms of the employment contract. Mr. Yang is not enforcing any terms of the employment contract. It's not coming in here and saying Section 7 of this employment contract is where I need relief. He doesn't need relief. In the absence of a contract, if there was no contract, he would still have a Jones Act claim. He would still have a DOSA claim, and he would still have a general maritime law unseaworthiness claim. And in this case, most of the actions arising against Dong Wan arise out of the fact that they had unrelated contracts to manage the crewing, the maintenance, the upkeep, and the repair of the vessel, and they didn't do their job. And that is what contributed to Mr. Yang's death. And so the employment contract is a piece of evidence that shows why Mr. Yang may have been on board, but I think what's being conflated here by Dong Wan is their ability to turn the arbitral clause inside that employment contract into some huge, broad clause that not only covers Majestic Blue, but also covers Dong Wan for anything that comes out of that. And that they are not allowed to do because they, A, don't get over the jurisdictional hurdle, and B, they don't even get over the substantive hurdle of being entitled to equitable estoppel. And I think the difference under California law is that it must rely on the terms of the contract. And Mr. Yang's claims, it's not required that they rely on the contract. There happens to be one, but that's not where this arises out of. It arises out of the statutory claims that are available to him, irrespective of whether there was a contract or not. Okay. Thank you. Thank you, Counsel. I'll give you a minute for rebuttal. Let me be absolutely clear on this particular point. But for Mr. Yang being an employee, have an employee contract, he would have no claim under the Jones Act, no claim under Death on the High Seas Act, and no claim under general maritime law. Why? Because the sole basis and the sole reason Mr. Yang is on that particular vessel is because of his employment contract. And, in fact, in the record, there was an affidavit that was signed by S.J. Park in this case that indicated that the reason that they enter into these contracts is so that they can work on these vessels in the first instance. And the complaint where my colleague said the complaint doesn't reference or at least rely upon the contract to support the Jones Act, the on-sea worthiness, and the general maritime claim, one only need look at ER 464 of the complaint where the relevant fact is on March 23, 2010, Mr. Yang executed an employment contract with Dong Wang Limited. And, in fact, he goes on and says the contract was for 18 months aboard the Majestic Blue. And then he goes on to say, based upon that employment, it is the reason why the employer, in this case, which he alleges to be Dong Wang and the legal owner and operator and manager he alleges to be Dong Wang, then caused Mr. Yang's life to be lost. Let me just ask you one question that counsel was talking about. In the motion to compel arbitration, the motion did invoke the convention. It did. I gather if we conclude that the convention requires a contract in writing, and there isn't one here, there's no jurisdiction. Is that correct? I don't think that's correct, Your Honor, because there is, in fact, a contract in writing. The issue is whether or not it's signed by the parties, right? Right, signed. If we conclude it has to be signed by the parties under the convention, there's no jurisdiction here. But a convention doesn't require it to be signed by the parties. Well, I'm saying if we disagree, if we were to, let's say we agreed with the Second Circuit. The Second Circuit is a different analysis. No, honestly, what I'm saying to you is that even under the Second Circuit, what the Second Circuit was saying was that the Second Circuit said on the can that you can have an arbitration clause or you can have an arbitration agreement signed by the parties. And so the Second Circuit says no, signed by the parties goes to the arbitration clause, it goes to the arbitration agreement. The Fifth Circuit in Spear v. Drake is different. But the point is that there has to be an arbitration clause or a separate independent arbitration agreement signed by the parties. And what you're saying is that that doesn't really end the case for you because now you're getting back to your agency theory that Don Wong was a party because it served as the agent. Not only that, Your Honor, but if you look at the multiple cases, even in the district courts of California, all of them hold that non-signatories in convention cases, in convention cases, can apply under the convention with an agreement that is not signed by the parties. And so there are multiple cases. Because even in the Ballin case, it wasn't signed by, quote, unquote, the party. It wasn't signed by Holland America. It was signed by a Filipino company called UPL. And this court held that you have to look at the ordinary contract and agency principles, not only under the convention but under the FAA. And there are multiple cases, Your Honor, multiple cases. Assuming that that issue is preserved, we may have to get some supplemental briefing from the parties on this one. Okay, Your Honor. Thank you for your time. Thank you. That concludes our session for this morning. The matter is submitted. Counsel, have a safe trip back to Florida. Fly safely. And enjoy the time that you're here. Yes. Well, it's probably very similar, right? All right. Take care. Thank you. All rise.
judges: Fisher, Paez, Nguyen